IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



FILED
IN OPEN COURT

NOV 23 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) No. 1:11cr559 <br> ) <br> ) Count One – Conspiracy to Import Heroin <br> ) (21 U.S.C. § 963) <br> ) |
| v. | ) Count Two – Distribution for Purpose of <br> ) Unlawful Importation of Heroin <br> ) (21 U.S.C. §§ 959 (a) & 960) <br> ) |
| EDMOND DARKWAH, <br> a/k/a "Henry," | ) Count Three – Distribution for Purpose of <br> ) Unlawful Importation of Heroin <br> ) (21 U.S.C. §§ 959 (a) & 960) <br> ) |
| Defendant | ) Forfeiture Notice <br> ) (21 U.S.C. §§ 853 & 970) |

INDICTMENT

November 2011 Term – At Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this indictment:

GENERAL ALLEGATIONS

1. The defendant, EDMOND DARKWAH, a/k/a "Henry," was a resident of Ghana. DARKWAH was a supervisor with the Ghana Aviation Security Section (AVSEC) and was employed at Kotoka International Airport, in Accra, Ghana.

2. Edward Macauley was a resident of Ghana. Macauley was a leader of a Ghana-based heroin trafficking organization and was responsible for importing into the United States multiple kilograms of heroin. The Macauley organization used couriers aboard commercial airlines to smuggle heroin from Ghana to the United States.

3.   Nuru Yakubu was a resident of Ghana. Yakubu arranged for and used couriers in Ghana to transport heroin from Ghana to the United States.

4.   Jacqueline Aku Jordan was a citizen of Ghana and a resident of New York. Jordan was a courier for the Macauley organization.

COUNT ONE

*Conspiracy to Import Heroin – 21 U.S.C. § 963*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 4 of the General Allegations are incorporated here.

5. From at least in or about September 2010 through at least June 2011, in the Eastern District of Virginia and elsewhere, the defendant, EDMOND DARKWAH, a/k/a "Henry," and others known and unknown to the Grand Jury, conspired and agreed to commit the following offenses against the United States:

    a. Knowingly, intentionally, and unlawfully to import a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, into the United States from a place outside thereof, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) & 960(b)(1)(A);

    b. Knowingly, intentionally, and unlawfully to bring and possess on board an aircraft arriving in the United States a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, not part of the cargo entered in the manifest or part of the official supplies of the aircraft, in violation of 21 U.S.C. §§ 955, 960(a)(2) & 960(b)(1)(A); and

    c. To distribute a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, intending and knowing that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(a)(3) & 960(b)(1)(A).

In furtherance of this conspiracy and to accomplish its unlawful objects, the defendant and his co-conspirators committed the following overt acts in the Eastern District of Virginia and elsewhere:

*The November 2010 Shipment of Heroin*

6. On or about November 4, 2010, in Accra, Ghana, Macauley explained to a drug courier that there were no drug detection machines at the Kotoka International Airport.

7. On or about November 20, 2010, Macauley met the drug courier at Macauley's house in Accra, Ghana. Macauley told the courier that the courier's trip to transport the drugs would occur on November 26, 2010. Macauley told the courier to call Yakubu to obtain the courier's passport.

8. On or about November 22, 2010, Yakubu met with the drug courier in Accra, Ghana, and told him that a reservation had been made for the courier on United Airlines flight number 991 departing on November 27, 2010, and that the carry-on bag containing drugs would be given to him at the Kotoka International Airport.

9. On or about November 27, 2010, Yakubu purchased the ticket for the drug courier and told the courier to prepare to travel on November 28, 2010.

10. On or about November 28, 2010, Yakubu and DARKWAH met with the drug courier at the Kotoka International Airport. DARKWAH told Yakubu that it was safe for the courier to check in for the flight. Later that day, before boarding the aircraft, the courier was given the carry-on bag containing approximately 1.4 kilograms of heroin that the courier was to transport to Dulles International Airport.

11. On or about November 29, 2010, the drug courier arrived at Dulles International Airport, in the Eastern District of Virginia, in possession of the carry-on bag containing approximately 1.4 kilograms of heroin.

*The June 2011 Shipment of Heroin*

12. In or about May or June 2011, in Accra, Ghana, Jordan was introduced to Yakubu and told that she would be paid up to $15,000 to transport heroin to the United States.

13. In or about May or June 2011, Yakubu introduced Jordan to Macauley.

14. On or about June 5, 2011, Macauley and another co-conspirator met Jordan in Accra, Ghana. The co-conspirator, using a wig of artificial hair, stitched a parcel containing approximately one kilogram of heroin into Jordan's hair.

15. On or about June 5, 2011, Yakubu took Jordan to Kotoka International Airport to meet with DARKWAH. DARKWAH told Jordan that he would ensure safe passage through the airport for her. Yakubu told Jordan that he paid DARKWAH $2,000 for his assistance.

16. On or about June 6, 2011, Jordan, while in possession of approximately one kilogram of heroin, attempted to depart Kotoka International Airport in Ghana on United Airlines flight number 991, which was bound for Dulles International Airport in the Eastern District of Virginia.

(In violation of Title 21, United States Code, Section 963.)

COUNT TWO

*Distribution for Purpose of Unlawful Importation of Heroin – 21 U.S.C. §§ 959(a) & 960*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 4 of the General Allegations and paragraphs 6 through 11 of Count One are incorporated here.

On or about November 29, 2010, in the Eastern District of Virginia and elsewhere, the defendant, EDMOND DARKWAH, a/k/a "Henry," distributed, and aided and abetted the distribution of, a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, intending and knowing that such substance would be unlawfully imported into the United States.

(In violation of Title 21, United States Code, Sections 959(a), 960(a)(3) & 960(b)(1)(A) and Title 18, United States Code, Section 2).

COUNT THREE

*Distribution for Purpose of Unlawful Importation of Heroin – 21 U.S.C. §§ 959(a) & 960*

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 4 of the General Allegations and paragraph 12 through 16 of Count One are incorporated here.

On or about June 6, 2011, in the Eastern District of Virginia and elsewhere, the defendant, EDMOND DARKWAH, a/k/a "Henry," distributed, and aided and abetted the distribution of, a schedule I controlled substance, that is, one kilogram or more of a mixture and substance containing a detectable amount of heroin, intending and knowing that such substance would be unlawfully imported into the United States.

(In violation of Title 21, United States Code, Sections 959(a), 960(a)(3) & 960(b)(1)(A) and Title 18, United States Code, Section 2).

NOTICE

*Forfeiture – 21 U.S.C. §§ 853 & 970*

Pursuant to FED. R. CRIM. P. 32.2(a), the defendant is hereby notified that, if convicted of the offenses charged in this indictment, he shall forfeit to the United States any property constituting or derived from any proceeds the defendant and his co-conspirators obtained, directly or indirectly, as the result of such violations, or substitute assets therefor, up to and including a sum of money equal to $810,000 in United States currency, which includes the estimated U.S. value of the heroin, and any of the defendant's property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations. (Pursuant to Title 21, United States Code, Sections 853 and 970; Title 18, United States Code, Section 982; Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.)

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

FOREPERSON

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____
James R. Gillis
Karen L. Dunn
Assistant United States Attorneys

-8-